1  Adam Alper (SBN 196834)
   adam.alper@kirkland.com
2  Brandon Brown (SBN 266347)
   brandon.brown@kirkland.com
3  KIRKLAND & ELLIS LLP
   555 California Street
4  San Francisco, CA 94104
   Telephone: +1 415 439 1400
5  Facsimile: +1 415 439 1500

6  Michael W. De Vries (SBN 211001)
   michael.devries@kirkland.com
7  Christopher M. Lawless (SBN 268952)
   christopher.lawless@kirkland.com
8  Allison W. Buchner (SBN 253102)
   allison.buchner@kirkland.om
9  Sharre Lotfollahi (SBN 258913)
   sharre.lotfollahi@kirkland.com
10 Kevin Bendix (SBN 285295)
   kevin.bendix@kirkland.com
11 KIRKLAND & ELLIS LLP
   333 South Hope Street
12 Los Angeles, CA 90071
   Telephone: +1 213 680 8400
13 Facsimile: +1 213 680 8500

14 Attorneys for Plaintiff

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| INTEL CORPORATION, | CASE NO. 19-CV-2241 |
| Plaintiff, | **COMPLAINT FOR DECLARATORY JUDGMENT** |
| v. | **DEMAND FOR JURY TRIAL** |
| PACT XPP SCHWEIZ AG, | |
| Defendant. | |

Plaintiff Intel Corporation ("Intel"), for its Complaint against PACT XPP Schweiz AG ("Defendant"), hereby alleges as follows:

## NATURE OF THE ACTION

1. This is an action for breach of contract and declaratory judgment that 12 United States patents are not infringed, and are covered by a covenant not to sue and/or exhausted pursuant to the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the Patent Laws of the United States, 35 U.S.C. § 100 *et seq.*, and for such other relief as the Court deems just and proper.

## THE PARTIES

2. Plaintiff Intel is a corporation organized and existing under the laws of the State of Delaware having its principal place of business at 2200 Mission College Boulevard, Santa Clara, California, 95054. Intel does business in this District.

3. Upon information and belief, Defendant PACT XPP Schweiz AG is a Swiss corporation, with its principal place of business in Switzerland.

4. Defendant alleges that PACT XPP Schweiz AG's predecessor and assignor PACT XPP TECHNOLOGIES AG (Lichtenstein) (hereinafter, collectively with PACT XPP Schweiz AG, referred to as "PACT") was founded in 1996 in Germany by Martin Vorbach.

5. PACT alleges that it is the assignee and owner of the patents at issue in this action: U.S. Patent Nos. 7,928,763, 8,301,872, 8,312,301, 8,471,593, 8,686,549, 8,819,505, 9,037,807, 9,075,605, 9,170,812, 9,250,908, 9,436,631, and 9,552,047.

## JURISDICTION AND VENUE

6. This Court has exclusive subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1338(a), 2201, and 2202, and the Patent Laws of the United States, 35 U.S.C. § 1 *et. seq.* The Court has supplemental jurisdiction over Intel's breach of contract claim under 28 U.S.C. § 1367.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391.

8. This Court has personal jurisdiction over PACT by virtue of PACT's sufficient minimum contacts with this forum.

9.      Upon information and belief, Martin Vorbach is the founder and Chief Technology Officer of PACT.  Upon information and belief, Mr. Vorbach resides and does business in the San Francisco Bay Area.  *See* Ex. 1 (LinkedIn).

10.      On or about October 15, 2007, PACT and Intel entered into a letter agreement containing a covenant not to sue (the "Covenant Not To Sue").  As described in more detail below, the Covenant Not To Sue precludes PACT from asserting the patents at issue in this Complaint. PACT's former CEO, Peter Weber and Intel's Kirk Skaugen executed the agreement.  The Covenant Not To Sue lists Intel's address as 2200 Mission College Blvd., Santa Clara, CA 95052.  The Covenant Not To Sue lists PACT's address as 103 Altura Vista, Los Gatos, CA 95032.

11.      Upon information and belief, Martin Vorbach is also the founder and Chief Technology Officer of Hyperion-Core, Inc.  Upon information and belief, Hyperion-Core, Inc.'s headquarters is also currently located at 103 Altura Vista, Los Gatos, CA 95032, as stated on its website.[1]

12.      Upon information and belief, during approximately 2003-2011, PACT had meetings within this District with Intel regarding the Covenant Not To Sue and other agreements entered into between the companies, identifying PACT's address in Los Gatos California.

13.      Upon information and belief, PACT has previously consented to personal jurisdiction in this District.  More specifically, upon information and belief.  Altera Corporation filed a declaratory judgment action against PACT in this district on or around June 20, 2014.  *See* Altera Corp. v. PACT XPP Technologies, AG, Case No. 3:14-cv-02868-JD.  Upon information and belief, PACT consented to personal jurisdiction in that case.  *See* Ex. 2 at ¶ 5 ("PACT consents to the personal jurisdiction in this Court.")

14.      This Court has subject matter jurisdiction over this action based on a real and immediate controversy between PACT and Intel regarding whether various of Intel's processors ("CPUs") infringe certain PACT patents, and further whether those PACT patents are covered by a covenant not to sue and/or exhausted.  As described in more detail below, this controversy arises out of PACT's and Mr. Vorbach's infringement allegations and licensing demands to Intel in which PACT

---

[1]     http://hyperion-core.com/contact-us;
http://hyperion-core.com/products/availability/martin-vorbach

broadly alleges its patents cover technologies implemented by Intel Core and Xeon processors with Sandy Bridge and above microarchitectures, including allegedly infringing ring bus architecture, Turbo Boost, and Foveros technologies.  *See* Ex. 3 (Complaint, Case No. 1:19-cv-00267-RGA).

15.     PACT purports to be the owner of a portfolio of patents that, according to PACT, allegedly relate to "multi-core processing systems including how to handle more complex algorithms with large amounts of data involving multiple processors on a single chip."  Ex. 3 at ¶ 8.  According to PACT, its alleged portfolio includes U.S. Patent Nos. 7,928,763 ("the '763 Patent"), 8,301,872 ("the '872 Patent"), 8,312,301 ("the '301 Patent"), 8,471,593 ("the '593 Patent"), 8,686,549 ("the '549 Patent"), 8,819,505 ("the '505 Patent"), 9,037,807 ("the '807 Patent"), 9,075,605 ("the '605 Patent"), 9,170,812 ("the '812 Patent"), 9,250,908 ("the '908 Patent"), 9,436,631 ("the '631 Patent"), and 9,552,047 ("the '047 Patent") (collectively, the "Patents-in-Suit"), as well as other U.S. Patents.

16.     Intel has been a pioneer in the semiconductor industry since the 1970s. Intel has introduced generation after generation of cutting-edge microprocessors, memory products and related chips that have been the benchmark for high performance computers. Intel is currently the world's leading supplier of computer processors, and is one of the largest investors and employers in high-tech manufacturing in the U.S.  The processors that PACT accuses of infringement are foundational for the U.S. economy. They are designed and made by Intel in the U.S., packaged and tested abroad, and sold to customers worldwide. These Intel processors are used in computers across every major sector of U.S. industry and in defense, government, healthcare, banking, and education. The accused processors also power advanced systems, including servers supporting the Internet and the Cloud, MRIs, military platforms, and supercomputers. Intel supplies over 90% of the CPUs used in personal computers and servers.

## PROCEDURAL BACKGROUND

17.     On February 7, 2019, PACT filed a complaint against Intel in the United States District Court for the District of Delaware ("First Filed Delaware Case"), alleging infringement of the same 12 patents at issue here:  U.S. Patent Nos. 7,928,763 ("the '763 Patent"), 8,301,872 ("the '872 Patent"), 8,312,301 ("the '301 Patent"), 8,471,593 ("the '593 Patent"), 8,686,549 ("the '549 Patent"), 8,819,505 ("the '505 Patent"), 9,037,807 ("the '807 Patent"), 9,075,605 ("the '605 Patent"), 9,170,812 ("the '812

Patent"), 9,250,908 ("the '908 Patent"), 9,436,631 ("the '631 Patent"), and 9,552,047 ("the '047 Patent") (collectively, the "Patents-in-Suit").  PACT alleged that Intel infringed the Patent-in-Suit based on its "manufactur[ing], use (including testing), sale, offer for sale, advertisement, importation, shipment and distribution, service, installation, and/or maintenance of Intel Core processors with Sandy Bridge and above microarchitectures…and Intel Xeon processors with Sandy Bridge and above microarchitectures . . . ."  Ex. 3 at ¶ 32.

18.     On February 11, 2019, PACT filed its Rule 7.1 Disclosure Statement in the First Filed Delaware Case.

19.     On February 20, 2019, PACT and Intel filed a stipulation to extend Intel's time "to answer, move or otherwise respond to the Complaint [to] April 15, 2019" in the First Filed Delaware Case.

20.     On March 26, 2019, PACT attempted to serve its First Set of Requests for Production (Nos. 1-48) on Intel ahead of any meet and confer of the parties under Fed. R. Civ. P. Rule 26 in the First Filed Delaware Case.

21.     On April 9, 2019, Intel's counsel met and conferred with PACT's counsel regarding an extension to Intel's deadline to respond to PACT's complaint in the First Filed Delaware Case. PACT's counsel agreed to stipulate that Intel be given two additional weeks to answer PACT's Complaint, given Intel's agreement to answer the Complaint and not move to dismiss:  "this email confirms our agreement to stipulate to an additional 2 weeks to answer the complaint.  Michael and Brian [PACT's Delaware counsel], I [PACT's national counsel] authorized Jack [Intel's Delaware counsel] to so represent to the Court since Intel will be answering not moving in response to the Complaint."  *See* Ex. 4 (4/9/19 Email F. Lorig to J. Blumenfeld).  Intel agreed, and a stipulation was entered, extending Intel's time to answer PACT's Complaint to April 29, 2019.

22.     On April 23, 2019, as required by local rules prior to filing a motion to transfer, Intel's counsel met and conferred again with PACT's counsel.  Intel's counsel expressed its intent to file a motion to transfer the First Filed Delaware Case based on 28 U.S.C. § 1404(a).  PACT's counsel responded:  "Jack [Intel's Delaware counsel], on behalf of [I]ntel you said there would be an answer filed not a motion to transfer in return for last stipulation."  *See* Ex. 5 (4/23/19 Email F. Lorig to J.

Blumenfeld).  Intel responded that it would indeed file an answer, and that "[t]he motion to transfer will not be in lieu of an answer."  *Id.*

23.     The same day, PACT filed a second complaint against Intel in W.D. Texas (Second Filed Texas Case), while the First Filed Delaware Case was still pending, alleging infringement of the same 12 Patents-in-Suit.  PACT's Complaint in the Second Filed Texas Case is substantively identical to its Complaint in the First Filed Delaware Case, except that PACT also includes allegations about Intel's business in Austin, Texas in an attempt to establish personal jurisdiction.  *See* Ex. 6 (W.D. Tex. Complaint) at ¶ 2.

24.     The next day, on April 24, 2019, PACT filed a Notice of Dismissal Without Prejudice in the First Filed Delaware Case.  *See* Ex. 7 (Notice of Dismissal).

25.     Upon information and belief, PACT's filing of the Second Filed Texas Case while the First Filed Case was still pending and subsequent dismissal of the First Filed Delaware Case was based solely on Intel's communicated intent to file a motion to transfer from Delaware and constitutes an attempt to improperly forum shop.

26.     By virtue of these acts, an actual and justiciable controversy exists between the parties concerning Intel's liability for the alleged infringement of the disputed claims of the patents-in-suit. Intel now seeks a declaratory judgment of noninfringement of the disputed claims of the PACT Patents-in-Suit.

### THE PATENTS-IN-SUIT

27.     The United States Patent Office ("USPTO") issued the '763 Patent, entitled "Multi-Core Processing System," on April 19, 2011.  A copy of the '763 Patent is attached hereto as Exhibit A.

28.     The USPTO issued the '872 Patent, entitled "Pipeline Configuration Protocol and Configuration Unit Communication," on April 19, 2011.  A copy of the '872 Patent is attached hereto as Exhibit B.

29.     The USPTO issued the '301 Patent, entitled "Methods and Devices for Treating and Processing Data," on November 13, 2012.  A copy of the '301 Patent is attached hereto as Exhibit C.

30.     The USPTO issued the '593 Patent, entitled "Logic Cell Array and Bus System," on June 25, 2013.  A copy of the '593 Patent is attached hereto as Exhibit D.

31.     The USPTO issued the '549 Patent, entitled "Reconfigurable Elements," on April 1, 2014.  A copy of the '549 Patent is attached hereto as Exhibit E.

32.     The USPTO issued the '505 Patent, entitled "Data Processor Having Disable Cores," on August 26, 2014.  A copy of the '505 Patent is attached hereto as Exhibit F.

33.     The USPTO issued the '807 Patent, entitled "Processor Arrangement on a Chip Including Data Processing, Memory, and Interface Elements," on May 19, 2015.  A copy of the '807 Patent is attached hereto as Exhibit G.

34.     The USPTO issued the '605 Patent, entitled "Methods and Devices for Treating and Processing data," on July 7, 2015.  A copy of the '605 Patent is attached hereto as Exhibit H.

35.     The USPTO issued the '812 Patent, entitled "Data Processing System Having Integrated Pipelined Array Data Processor," on October 27, 2015.  A copy of the '812 Patent is attached hereto as Exhibit I.

36.     The USPTO issued the '908 Patent, entitled "Multi-Processor Bus and ache Interconnection System," on February 2, 2016.  A copy of the '908 Patent is attached hereto as Exhibit J.

37.     The USPTO issued the '631 Patent, entitled "Chip Including Memory Element Storing Higher Level Memory Data on a Page by Page Basis," on September 6, 2016.  A copy of the '631 Patent is attached hereto as Exhibit K.

38.     The USPTO issued the '047 Patent, entitled "Multiprocessor Having Runtime Adjustable Clock and Clock Dependent Power Supply," on January 24, 2017.  A copy of the '047 Patent is attached hereto as Exhibit L.

## ACCUSED INTEL INSTRUMENTALITIES

39.     PACT has accused Intel of infringing the Patents-in-Suit through the manufacture, use (including testing), sale, offer for sale, advertisement, importation, shipment and distribution, service, installation, and/or maintenance of Intel Core processors with Sandy Bridge and above microarchitectures (the "Accused Core Instrumentalities") and Intel Xeon processors with Sandy Bridge and above microarchitectures (the "Accused Xeon Instrumentalities") and on information and belief other processors incorporating ring bus architecture or equivalents.  *See* Ex. 3 at ¶ 32.

40.     According to PACT, Intel's "Accused Core Instrumentalities," including Intel Core processors with Sandy Bridge and above microarchitectures, including, but not limited to, Core i3, Core i5, Core i7, Core i9, and other core processors with the microarchitectures of Sandy Bridge, Ivy Bridge, Haswell, Broadwell, Skylake, Kaby Lake, Coffee Lake, Cannon Lake, Ice Lake, and above, allegedly infringe the Patents-in-Suit.  *See* Ex. 3 at ¶ 33.  Intel denies such alleged infringement.

41.     According to PACT, Intel's "Accused Xeon Instrumentalities," including Intel Xeon processors with Sandy Bridge and above microarchitectures, including, but not limited to, E3, E5, E7, and other Xeon processors with the microarchitectures of Sandy Bridge, Ivy Bridge, Haswell, Broadwell, Skylake, Kaby Lake, and above, allegedly infringe the Patents-in-Suit.  *See* Ex. 3 at ¶ 34.  Intel denies such alleged infringement.

42.     According to PACT, Intel's "Accused Turbo Boost Instrumentalities," including Intel processors with a GPU with the Turbo Boost feature, allegedly infringe the Patents-in-Suit.  *See* Ex. 3 at ¶¶ 35, 207.  Intel denies such alleged infringement.

43.     According to PACT, Intel's "Accused Turbo Boost 3.0 Instrumentalities" including Intel processors with Turbo Boost Max Technology 3.0, allegedly infringe the Patents-in-Suit.  *See* Ex. 3 at ¶¶ 35, 88.  Intel denies such alleged infringement.

44.     According to PACT, Intel's "Accused Stacking Instrumentalities," including Intel chips and/or chipsets implementing Foveros technology, such as Lakefield, allegedly infringe the Patents-in-Suit.  *See* Ex. 3 at ¶¶ 35, 135.  Intel denies such alleged infringement.

45.     According to PACT, Intel's "Accused '505 Instrumentalities," including the Accused Xeon instrumentalities with nine or more core, allegedly infringe the Patents-in-Suit.  *See* Ex. 3 at ¶¶ 35, 160.  Intel denies such alleged infringement.

**COUNT I**
**BREACH OF CONTRACT**

46.     Intel repeats and realleges the allegations in paragraphs 1–45 as though fully set forth herein.

47.     On or about October 15, 2007, PACT XPP Technologies Inc. and Intel Corporation entered into a letter agreement containing a covenant not to sue (the "Covenant Not To Sue"). PACT XPP Technologies Inc.'s former CEO, Peter Weber and Intel's Kirk Skaugen executed the agreement.

48.     The Covenant Not To Sue precludes PACT from asserting at least the following claims of the following United States Patents against Intel: claim 1 of 7,928,763 ("the '763 Patent"); claim 2 of 8,301,872 ("the '872 Patent"); claim 10 of 8,312,301 ("the '301 Patent"); claim 1 of 8,471,593 ("the '593 Patent"); claim 39 of 8,686,549 ("the '549 Patent"); claim 27 of 8,819,505 ("the '505 Patent"); claim 1 of 9,037,807 ("the '807 Patent"); claim 1 of 9,075,605 ("the '605 Patent"); claim 12 of 9,170,812 ("the '812 Patent"); claim 4 of 9,250,908 ("the '908 Patent"); claim 1 of 9,436,631 ("the '631 Patent"); and claim 1 of 9,552,047 ("the '047 Patent") (collectively, the "Asserted Claims of the Patents-in-Suit").

49.     The preamble of the Covenant Not To Sue provides that, "[i]n consideration of Intel providing PACT XPP Technologies Inc., its parent(s), subsidiaries and affiliates (collectively, "Company") ongoing access to and use of Intel confidential, proprietary and trade secret information relating to the Front Side Bus (as defined below), pursuant to the applicable nondisclosure agreement (such as a Restricted Secret Non-Disclosure Agreement ("RSNDA")) in effect between Intel and Company, Intel and Company hereby agree to the terms and obligations of this letter agreement . . . ."

50.     Under paragraph 2.1 of the Covenant Not To Sue, PACT agreed not to assert any "FSB Patent Rights" (defined at ¶¶ 1.4 and 1.6 of the agreement) "against Intel, its subsidiaries or affiliates, or their customers (direct or indirect), distributors (direct or indirect), agents (direct or indirect) and contractors (direct or indirect) for the manufacture, use, import, offer for sale or sale of any of Intel's Products or any process or method employed in the manufacture, testing, distribution or use thereof . . . ."

51.     "Intel's Products" as defined at ¶ 1.5 of the Covenant Not To Sue means "all products made by or for Intel," and accordingly all of the Accused Products (as defined in PACT's Complaint) qualify as "Intel's Products" as used in paragraph 2.1 of the Covenant Not To Sue.

52.     The Covenant Not To Sue "survive[s] any termination or expiration of this Agreement and shall remain in full force and effect until mutually agreed otherwise by [Intel and PACT]."  There has been no agreement to terminate the Covenant Not To Sue and it remains in full force and effect.

53.     Pursuant to ¶ 2.2 of the Covenant Not To Sue, if PACT claims that it is not obligated under the agreement based on assignment of any of the Asserted Claims of the Patents-in-Suit that are FSB Patent Rights, then "Intel shall have a nonexclusive, nontransferable license . . . under such assigned FSB Patent Rights to make, use, sell, offer for sale and import Intel's Products" which "conditional license shall survive any termination or expiration of [the Covenant Not To Sue] and shall remain in full force and effect until mutually agreed otherwise by the parties."

54.     PACT's infringement claims against Intel respecting at least the Asserted Claims of the Patents-in-Suit are based at least in part on, and on their face encompass, the alleged making, using, selling, offering to sell, and importing into the United States the following respective Accused Products (as defined in PACT's Complaint), and PACT's claims are accordingly barred by the Covenant Not To Sue: claim 1 of the '763 Patent and the Accused Core Instrumentalities and the Accused Xeon Instrumentalities; claim 2 of the '872 Patent and the Accused Core Instrumentalities and the Accused Xeon Instrumentalities; claim 10 of the '301 Patent and the Accused Turbo Boost 3.0 Instrumentalities; claim 1 of the '593 Patent and the Accused Core Instrumentalities and the Accused Xeon Instrumentalities; claim 39 of the '549 Patent and the Accused Stacking Instrumentalities; claim 27 of the '505 Patent and the Accused '505 Instrumentalities; claim 1 of the '807 Patent and the Accused Core Instrumentalities and the Accused Xeon Instrumentalities; claim 1 of the '605 Patent and the Accused Turbo Boost Instrumentalities; claim 12 of the '812 Patent and the Accused Core Instrumentalities; claim 4 of the '908 Patent and the Accused Core Instrumentalities and the Accused Xeon Instrumentalities; claim 1 of the '631 Patent and the Accused Core Instrumentalities and the Accused Xeon Instrumentalities; and claim 1 of the '047 Patent and the Accused Turbo Boost Instrumentalities.

55.     As a result of the acts described above, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment, and a judicial

declaration is necessary and appropriate so that Intel may ascertain its rights with respect to the Patents-in-Suit.

56.     Intel is entitled to a judicial declaration that PACT may not assert at least any of the Asserted Claims of the Patents-in-Suit against Intel and a finding that PACT is in breach of the Covenant Not To Sue.

57.     Intel is entitled to all remedies provided under law, including monetary damages and specific performance by PACT to dismiss any claims of patent infringement by PACT concerning the Asserted Claims of the Patents-in-Suit.

**COUNT II**
**DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 7,928,763**

58.     Intel repeats and realleges the allegations in paragraphs 1–57 of its Complaint.

59.     PACT alleges that Intel Products including the Accused Core Instrumentalities and the Accused Xeon Instrumentalities infringe one or more claims of the '763 Patent.  For example, PACT alleges that the Accused Core Instrumentalities and the Accused Xeon Instrumentalities embody every limitation of claim 1 of the '763 Patent, literally or under the Doctrine of Equivalents.  *See* Ex. 3 at ¶¶ 36-59.

60.     Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '763 Patent, either literally or under the Doctrine of Equivalents.  For example, the accused Intel Core and Xeon processors with Sandy Bridge and above microarchitectures do not infringe, directly or indirectly, any asserted claim of the '763 Patent at least because the accused processors do not include a bus system "adapted for programmably interconnecting at runtime at least one of data processing cells and memory cells with at least one of memory cells and one or more of the at least one interface unit," as required by the asserted claims of the '763 Patent.

61.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

62.     A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '763 Patent.

63.     Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '763 Patent.

## COUNT III
### DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 8,301,872

64.     Intel repeats and realleges the allegations in paragraphs 1–63 of its Complaint.

65.     PACT alleges that Intel Products including the Accused Core Instrumentalities and the Accused Xeon Instrumentalities infringe one or more claims of the '872 Patent.  For example, PACT alleges that the Accused Core Instrumentalities and the Accused Xeon Instrumentalities embody every limitation of claim 2 of the '872 Patent, literally or under the Doctrine of Equivalents.  *See* Ex. 3 at ¶¶ 60-86.

66.     Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '872 Patent, either literally or under the Doctrine of Equivalents.     For example, the accused Intel Core and Xeon processors with Sandy Bridge and above microarchitectures do not infringe, directly or indirectly, any asserted claim of the '872 Patent at least because the accused processors do not include "at least one superior cache level including a plurality of same level cache nodes each including an internal cache memory" as required by the asserted claims of the '872 Patent.

67.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

68.     A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '872 Patent.

69.     Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '872 Patent.

## COUNT IV
### DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 8,312,301

70.     Intel repeats and realleges the allegations in paragraphs 1–69 of its Complaint.

71.     PACT alleges that Intel Products including the Accused Turbo Boost 3.0 Instrumentalities infringe one or more claims of the '301 Patent.  For example, PACT alleges that the

Accused Turbo Boost 3.0 Instrumentalities embody every limitation of claim 10 of the '301 Patent, literally or under the Doctrine of Equivalents.  *See* Ex. 3 at ¶¶ 87-109.

72.     Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '301 Patent, either literally or under the Doctrine of Equivalents.  For example, the accused Intel processors with Turbo Boost Max Technology 3.0 do not infringe, directly or indirectly, any asserted claim of the '301 Patent at least because the accused processors do not have "a software adapted to be executed to . . . assign to each of the code sections a respective clock frequency," as required by the asserted claims of the '301 Patent.

73.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

74.     A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '301 Patent.

75.     Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '301 Patent.

**COUNT V**
**DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 8,471,593**

76.     Intel repeats and realleges the allegations in paragraphs 1–75 of its Complaint.

77.     PACT alleges that Intel Products including the Accused Core Instrumentalities and the Accused Xeon Instrumentalities infringe one or more claims of the '593 Patent.  For example, PACT alleges that the Accused Core Instrumentalities and the Accused Xeon Instrumentalities embody every limitation of claim 1 of the '593 Patent, literally or under the Doctrine of Equivalents.  *See* Ex. 3 at ¶¶ 110-133.

78.     Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '593 Patent, either literally or under the Doctrine of Equivalents.  For example, the accused Intel Core and Xeon processors with Sandy Bridge and above microarchitectures do not infringe, directly or indirectly, any asserted claim of the '593 Patent at least because the accused processors do not include a bus system wherein "at least some of the data processing cores includes a

physically dedicated connection to at least one physically assigned one of the plurality of memory units" as required by the asserted claims of the '593 Patent.

79.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

80.    A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '593 Patent.

81.    Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '593 Patent.

**COUNT VI**
**DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 8,686,549**

82.    Intel repeats and realleges the allegations in paragraphs 1–81 of its Complaint.

83.    PACT alleges that Intel Products including the Accused Core Instrumentalities, the Accused Xeon Instrumentalities, Atom processors, and/or the Accused Stacking Instrumentalities infringe one or more claims of the '549 Patent.  For example, PACT alleges that these instrumentalities embody every limitation of claim 39 of the '549 Patent, literally or under the Doctrine of Equivalents.  *See* Ex. 3 at ¶¶ 134-158.

84.    Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '549 Patent, either literally or under the Doctrine of Equivalents.    For example, the Accused Stacking Instrumentalities (as this term is used by PACT) do not infringe, directly or indirectly, any asserted claim of the '549 Patent at least because they do not include "an arrangement of programmable data processing units," or an "interconnect structure [that] includes switches," as required by the asserted claims of the '549 Patent.

85.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

86.    A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '549 Patent.

87.    Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '549 Patent.

## COUNT VII
### DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 8,819,505

88.     Intel repeats and realleges the allegations in paragraphs 1–87 of its Complaint.

89.     PACT alleges that Intel Products including the Accused '505 Instrumentalities infringe one or more claims of the '505 Patent.   For example, PACT alleges that the Accused '505 Instrumentalities embody every limitation of claim 27 of the '505 Patent, literally or under the Doctrine of Equivalents.  *See* Ex. 3 at ¶¶ 159-181.

90.     Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '505 Patent, either literally or under the Doctrine of Equivalents.     For example, the accused Intel Xeon processors with nine or more cores do not infringe, directly or indirectly, any asserted claim of the '505 Patent at least because the accused processors do not have "wherein, in view of a probability of the chip having defects already when being manufactured . . . so that some of the data processing cores can be exempted from data transfer in response to a chip test" as required by the asserted claims of the '505 Patent.

91.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

92.     A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '505 Patent.

93.     Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '505 Patent.

## COUNT VIII
### DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 9,037,807

94.     Intel repeats and realleges the allegations in paragraphs 1–93 of its Complaint.

95.     PACT alleges that Intel Products including the Accused Core Instrumentalities and the Accused Xeon Instrumentalities infringe one or more claims of the '807 Patent.  For example, PACT alleges that the Accused Core Instrumentalities and the Accused Xeon Instrumentalities embody every limitation of claim 1 of the '807 Patent, literally or under the Doctrine of Equivalents.  *See* Ex. 3 at ¶¶ 182-205.

96.     Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '807 Patent, either literally or under the Doctrine of Equivalents.  For example, the accused Intel Core and Xeon processors with Sandy Bridge and above microarchitectures do not infringe, directly or indirectly, any asserted claim of the '807 Patent at least because the accused products do not have "a plurality of memory elements that each independently operates as a cache for caching data," as required by the asserted claims of the '807 Patent.  The accused products also do not have "wherein the bus system is adapted for dynamically establishing and releasing transmission channels between a sending one of the elements and a receiving one of the elements," as required by the asserted claims of the '807 Patent.

97.     As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

98.     A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '807 Patent.

99.     Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '807 Patent.

## COUNT IX
## DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 9,075,605

100.     Intel repeats and realleges the allegations in paragraphs 1–99 of its Complaint.

101.     PACT alleges that Intel Products including the Accused Turbo Boost Instrumentalities infringe one or more claims of the '605 Patent.  For example, PACT alleges that the Accused Turbo Boost Instrumentalities embody every limitation of claim 1 of the '605 Patent, literally or under the Doctrine of Equivalents.  *See* Ex. 3 at ¶¶ 206- 228.

102.     Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '605 Patent, either literally or under the Doctrine of Equivalents.     For example, the accused Intel processors with a GPU with the Turbo Boost feature do not infringe, directly or indirectly, any asserted claim of the '605 Patent at least because the accused processors do not "[set] a clock frequency, of at least a part of the multiprocessor system to a minimum in accordance

with a number of pending operations of a first processor," as required by the asserted claims of the '605 Patent.

103.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

104.    A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '605 Patent.

105.    Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '605 Patent.

## COUNT X
## DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 9,170,812

106.    Intel repeats and realleges the allegations in paragraphs 1–105 of its Complaint.

107.    PACT alleges that Intel Products including the Accused Core Instrumentalities infringe one or more claims of the '812 Patent.  For example, PACT alleges that the Accused Core Instrumentalities embody every limitation of claim 12 of the '812 Patent, literally or under the Doctrine of Equivalents.  *See* Ex. 3 at ¶¶ 229-250.

108.    Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '812 Patent, either literally or under the Doctrine of Equivalents. For example, the accused Intel Core processors with Sandy Bridge and above microarchitectures do not infringe, directly or indirectly, any asserted claim of the '812 Patent at least because the accused processors do not include "[a]n integrated circuit data processor device comprising . . . an instruction dispatch unit separate from the data processor core connected to the array data processor, the instruction dispatch unit configured to dispatch software threads to the array data processor for parallel execution by the parallel processing arithmetic units," as required by the asserted claims of the '812 Patent.

109.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

110.    A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '812 Patent.

111.    Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '812 Patent.

**COUNT XI**
**DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 9,250,908**

112.    Intel repeats and realleges the allegations in paragraphs 1–111 of its Complaint.

113.    PACT alleges that Intel Products including the Accused Core Instrumentalities and the Accused Xeon Instrumentalities infringe one or more claims of the '908 Patent.  For example, PACT alleges that the Accused Core Instrumentalities and the Accused Xeon Instrumentalities embody every limitation of claim 4 of the '908 Patent, literally or under the Doctrine of Equivalents.  *See* Ex. 3 at ¶¶ 251-276.

114.    Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '908 Patent, either literally or under the Doctrine of Equivalents.  For example, the accused Intel Core and Xeon processors with Sandy Bridge and above microarchitectures do not infringe, directly or indirectly, any asserted claim of the '908 Patent at least because the accused products do not have "an interconnect system interconnecting each of the separated cache segments with each of the processors, each of the processors with neighboring processors, and each of the separated cache segments with neighboring separated cache segments," as required by the asserted claims of the '908 Patent. Further, the accused products do not have "at least some of the plurality of processors, the at least one interface, and the at least one separated cache having a module identification (ID)," as required by the asserted claims of the '908 Patent.

115.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

116.    A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '908 Patent.

117.    Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '908 Patent.

**COUNT XII**
**DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 9,436,631**

118.    Intel repeats and realleges the allegations in paragraphs 1–117 of its Complaint.

119.    PACT alleges that Intel Products including the Accused Core Instrumentalities and the Accused Xeon Instrumentalities infringe one or more claims of the '631 Patent.  For example, PACT alleges that the Accused Core Instrumentalities and the Accused Xeon Instrumentalities embody every limitation of claim 1 of the '631 Patent, literally or under the Doctrine of Equivalents.  *See* Ex. 3 at ¶¶ 277-297.

120.    Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '631 Patent, either literally or under the Doctrine of Equivalents.  For example, the accused Intel Core and Xeon processors with Sandy Bridge and above microarchitectures do not infringe, directly or indirectly, any asserted claim of the '631 Patent at least because the accused products do not have "a plurality of bus segments for each processor of the multiprocessor system comprising a plurality of flexible data channels to each processor of the multiprocessor system according to algorithms to be executed, wherein a plurality of algorithms may executed in parallel," as required by the asserted claims of the '631 Patent.

121.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

122.    A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '631 Patent.

123.    Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '631 Patent.

## COUNT XIII
## DECLARATION OF NONINFRINGEMENT OF U.S. PATENT NO. 9,522,047

124.    Intel repeats and realleges the allegations in paragraphs 1–123 of its Complaint.

125.    PACT alleges that Intel Products including the Accused Turbo Boost Instrumentalities infringe one or more claims of the '047 Patent.  For example, PACT alleges that the Accused Turbo Boost Instrumentalities embody every limitation of claim 1 of the '047 Patent, literally or under the Doctrine of Equivalents.  *See* Ex. 3 at ¶¶ 298-322.

126.    Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of the '047 Patent, either literally or under the Doctrine of Equivalents.   For example, the accused Intel processors with a GPU with the Turbo Boost feature do not infringe, directly or indirectly, any asserted claim of the '047 Patent at least because the accused processors do not have "each of the data processing units . . . being adaptable for sequentially processing data in a clocked manner," as required by the asserted claims of the '047 Patent.

127.    As a result of the acts described in the foregoing paragraphs, there exists a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.

128.    A judicial declaration is necessary and appropriate so that Intel may ascertain its rights regarding the '047 Patent.

129.    Intel is entitled to a judicial declaration that it has not infringed and does not infringe the '047 Patent.

**JURY DEMAND**

130.    Pursuant to Fed. R. Civ. P. Rule 38(b), Intel hereby demands a trial by jury on all issues and claims so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Intel requests that judgment be entered in its favor and prays that the Court grant the following relief:

131.    An order enjoining PACT and its officers, agents, servants, employees, attorneys, and those in active concert or participation with them from asserting infringement or instituting or continuing any action for infringement of the Patents-in-Suit against Intel or its subsidiaries, affiliates, customers (direct or indirect), distributors (direct or indirect), agents (direct or indirect), or contractors (direct or indirect);

132.    A declaration that Intel has not infringed and does not infringe, either directly or indirectly, any valid and enforceable claim of United States Patent Nos. 7,928,763, 8,301,872, 8,312,301, 8,471,593, 8,686,549, 8,819,505, 9,037,807, 9,075,605, 9,170,812, 9,250,908, 9,436,631, and 9,552,047, either literally or under the Doctrine of Equivalents;

133.   All remedies provided under law, including monetary damages and specific performance by PACT to dismiss any claims of patent infringement by PACT concerning the Asserted Claims of the Patents-in-Suit based on breach of the Covenant Not To Sue.

134.   An order declaring that this is an exceptional case, and awarding Intel its costs and reasonable attorney feeds under 35 U.S.C. ¶ 285; and

Such other and further relief as this Court may deem just and proper.

DATED:  April 25, 2019                                  Respectfully submitted,
                                                        KIRKLAND & ELLIS LLP


                                                        /s/ Adam Alper
                                                        Adam Alper
                                                        adam.alper@kirkland.com
                                                        Brandon Brown
                                                        brandon.brown@kirkland.com
                                                        KIRKLAND & ELLIS LLP
                                                        555 California Street
                                                        San Francisco, CA 94104
                                                        Telephone: +1 415 439 1400
                                                        Facsimile: +1 415 439 1500

                                                        Michael W. De Vries
                                                        michael.devries@kirkland.com
                                                        Christopher M. Lawless
                                                        christopher.lawless@kirkland.com
                                                        Allison W. Buchner
                                                        allison.buchner@kirkland.om
                                                        Sharre Lotfollahi
                                                        sharre.lotfollahi@kirkland.com
                                                        Kevin Bendix
                                                        kevin.bendix@kirkland.com
                                                        KIRKLAND & ELLIS LLP
                                                        333 South Hope Street
                                                        Los Angeles, CA 90071
                                                        Telephone: +1 213 680 8400
                                                        Facsimile: +1 213 680 8500

                                                        *Attorneys for Plaintiff Intel Corporation*